## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| THOMAS JOSEPH MURPHY, <br><br> Plaintiff, <br><br> v. <br><br> FIRST ADVANTAGE BACKGROUND SERVICES CORP., <br><br> Defendant. | Case No.: <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Thomas Joseph Murphy ("Plaintiff" or "Mr. Murphy") by and through his counsel brings the following Complaint against First Advantage Background Services Corp. ("Defendant" or "FADV") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's employer, which falsely reported that Plaintiff had two pending misdemeanor charges in the state of Florida.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and

1

furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's employer that Plaintiff had a pending misdemeanor charge of exposure of sexual organs and a misdemeanor charge of battery. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff's employer revoked Plaintiff's access to their platform after receiving an employment background check report from Defendant, which included the inaccurate pending misdemeanor charges that do not belong to Plaintiff.

5. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Sarasota County, Florida regarding the pending misdemeanor charges prior to publishing Plaintiff's report to his employer.

6. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their generational suffix, social security number and even the fact that they reside in a different part of the country from Plaintiff.

7. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

8. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

9. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

10. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12. Plaintiff is a natural person residing in New Richmond, Ohio and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13. Defendant First Advantage Background Services, Corp. ("Defendant" or "First Advantage") is a Florida corporation doing business throughout the United States, including the State of Delaware and in this District, and has a principal place of business located at 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328. First Advantage can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

14. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

15. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

20. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

22. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

23. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

24. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

25. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

26. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

28. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

29. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

30. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

31. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

32. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

33. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

34. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

35. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

36. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

37. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that belong to an unrelated consumer who has a different middle name and date of birth than Plaintiff.

38. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS
### Plaintiff's Driving Experience with Lyft

39. Plaintiff has been driving with Lyft for approximately five years and has maintained a positive driving record.

40. Upon information and belief, Lyft requires its drivers to undergo a background check every six months to continue using its platform.

41. In August of 2023, Plaintiff was due for a background check, which was conducted by Defendant.

**Defendant Published an Inaccurate Background Check Report to Lyft**

42. Lyft services contracted with Defendant to conduct background checks, including criminal background checks, on its drivers.

43. On or about August 20, 2023, Lyft requested a background check of Plaintiff from Defendant. At the time of the request, Plaintiff was a driver for Lyft.

44. On or about August 31, 2023, in accordance with its standard procedures, Defendant completed its background check report about Plaintiff and sold the same to Lyft.

45. Within that background check report, Defendant published inaccurate information about Plaintiff.

46. Specifically, Defendant's background check report about Plaintiff included two grossly inaccurate and stigmatizing pending misdemeanor charges of Exposure of Sexual Organs and Battery in Sarasota County, Florida, which appeared in the background check report as follows:

| | |
|---|---|
| Case Reference # | 2023 MM 008289 SC |
| Case Date | 19/Aug/2023 |
| Name on File | THOMAS JOSEPH MURPHY |
| Address on File | 2637 TISHMAN AVE, NORTH PORT, FL |
| DoB on File | 02/27/XXXX |
| Charge | EXPOSURE OF SEXUAL ORGANS 1ST OFFENSE |
| Charge Type | MISDEMEANOR |
| Disposition | PENDING NEXT COURT DATE SCHEDULED FOR |
| Disposition Date | 21/Sep/2023 |
| Charge | BATTERY - TOUCH OR STRIKE |
| Charge Type | MISDEMEANOR |
| Disposition | PENDING NEXT COURT DATE SCHEDULED FOR |
| Disposition Date | 21/Sep/2023 |

47. The pending criminal charges reported by Defendant about Plaintiff to Lyft ***do not*** belong to Plaintiff.

48. Plaintiff has never been charged with or convicted of a misdemeanor Exposure of Sexual Organs and Battery in his life.

49. A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated male, Thomas Murphy Doe ("Charged Doe").

50. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the two pending charges, it would have seen obvious discrepancies between Charged Doe and Plaintiff.

51. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Charged Doe include the following:

    (a) Plaintiff resides in Ohio, which is confirmed and clearly indicated on the face of the subject background check report, yet the underlying public court records regarding the two pending charges indicate that Charged Doe resided in North Port, Florida at the time he committed the offenses; and,

    (b) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report is entirely different than that of Charged Doe.

52. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's employer.

53. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing pending charges belong to an unrelated individual with a different address, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

54. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Lyft Suspends Plaintiff's Driving Eligibility

55. On or about August 31, 2023, Plaintiff was notified by Lyft that his eligibility to drive was under review as a direct result of the background check reported by Defendant.

56. Shortly thereafter, Plaintiff obtained a copy of the subject background check report and was shocked and humiliated upon reviewing and realizing that the serious pending charges convictions of another, namely Charged Doe, were published in the background check report Defendant sold about Plaintiff to Lyft.

### Plaintiff Disputed the Misinformation in Defendant's Background Check Report

57. On or about August 31, 2023, desperate to continue using the Lyft application and riddled with worry over the far-reaching impacts of being confused with Charged Doe, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

58. Plaintiff was very panicked, confused, and concerned about the impact of Charged Doe's serious pending charges reported on the subject background check report – specifically, the impact of the same on his future.

59. Specifically, Defendant matched Plaintiff and Charged Doe and published the criminal records of Charged Doe onto the background check report about Plaintiff and sold that report to Plaintiff's employer. This exculpatory public record information was widely available to Defendants prior to publishing Plaintiff's background check report to Lyft, but Defendant failed to perform even a cursory review of such information.

60. Plaintiff identified himself and provided information to Defendant to support his dispute.

61. Plaintiff specifically disputed the criminal records of Charged Doe.

62. Plaintiff specifically stated that the criminal records of Charged Doe do not belong to Plaintiff.

63. Plaintiff specifically asked Defendant to investigate and delete Charged Doe's criminal records from any background check report about Plaintiff.

64. On or about September 1, 2023, Plaintiff received an email from Defendant requesting Plaintiff's name, date of birth, and the employer that requested the background check.

65. On or about September 7, 2023, Plaintiff received a notification from Lyft indicating that his issue was resolved and that he was allowed to resume driving.

66. As of the date of filing this complaint, Plaintiff has never received an updated background check report from Defendant.

67. Defendant's false report cost Plaintiff the ability drive with Lyft for a week. More importantly, Plaintiff has two college aged daughters that he still helps financially and the money he earns with Lyft allows him to offer the financial support.

68. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law,

Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

69. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **15 U.S.C. § 1681e(b)**
### **Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

70. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

71. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

72. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

73. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

74. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

75. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of wages, and benefits; loss of economic

opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

76. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

77. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;
ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;
iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,
iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

//

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: October 12, 2023 | */s/ Peter Cozmyk*<br>Peter Cozmyk (0078862)<br>Of Counsel for Consumer Attorneys<br>COZMYK LAW OFFICES, LLC<br>6100 Oak Tree Blvd., Suite 200<br>Independence, OH 44131<br>T: (877) 570-4440<br>F: (216) 485-2125<br>E: pcozmyk@cozmyklaw.com<br><br>*Attorneys for Plaintiff*<br>*Thomas Joseph Murphy* |